IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRMA L. CARRILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3096 |
| | § | |
| BANK OF AMERICA, N.A., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This removed suit arises from a mortgage foreclosure. Irma L. Carrillo, the mortgagor, sued in state court Bank of America, N.A., the servicer of her mortgage; The Bank of New York Mellon, the trustee for the mortgage lender; and Sandra Dasigenis, the substitute trustee. In her state-court petition, Carrillo alleged that the defendants are liable for: (1) breach of contract; (2) negligence, negligent misrepresentation, and gross negligence; (3) violations of the Texas Deceptive Trade Practices Act ("DTPA"); (4) violations of the Texas Debt Collection Act ("TDCA"); and (5) promissory estoppel. The defendants removed and filed a motion to dismiss all of Carrillo's claims. (Docket Entry No. 12).

Based on the pleadings; the motion, response, and reply; and the applicable law, the defendants' motion to dismiss is granted. The claims for breach of contract, negligence, violations of the DTPA, and promissory estoppel are dismissed with prejudice. Carrillo's other claims are dismissed without prejudice and with leave to amend. Any amendment must be filed by May 13, 2013.

The reasons for these rulings are set out below.

## I. Background

The allegations in the petition, with the documents referred to in that petition and attached to the motion to dismiss, set out the background facts. Carrillo purchased the property at issue on June 15, 2006. To finance this purchase, she took out a $122,400 mortgage loan from America's Wholesale Lender. At some point, Bank of America became her loan servicer. In early 2011, Carrillo fell behind on her mortgage payments. In November of that year, Bank of America notified her that the property would be sold at foreclosure in January 2012.

In December 2011, Carrillo applied for a loan modification under HAMP. While Carrillo's modification application was pending, Bank of America scheduled and then postponed the foreclosure sale of her property on several occasions during 2012. Carrillo alleges that Bank of America required her to resubmit information and documentation for her modification application multiple times. Carrillo hired Ramon Hernandez to assist her with her HAMP application. Bank of America informed Hernandez that it would not cancel its foreclosure sale scheduled for September 4, 2012. Carrillo alleges that Bank of America did not tell her or Hernandez whether her HAMP application was approved or denied.

Carrillo alleges that on September 4, 2012, the judge of the 11th District Court of Harris County signed a temporary restraining order enjoining the defendants from proceeding with the foreclosure sale scheduled for that day. Carrillo asserts that the trustee advised the court that she had received a copy of the original petition and proposed order and asked for a copy of the executed order. She further alleges that the judge told the trustee that the order had been signed and the

foreclosure sale should not proceed. Carrillo alleges that the trustee informed her that the property was sold at foreclosure on September 4.[1] This lawsuit followed.

## II. The Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The federal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of cause of action will not do." *Id*. (quotation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (citation omitted)). A plaintiff should, however, be denied leave to amend a complaint if the court determines that the "proposed

---

[1] In response to the motion to dismiss, Carrillo states that she seeks an injunction and contempt of court for the defendants' actions in conducting the foreclosure sale despite the state court TRO. Carrillo does not allege any claims arising out of the defendants' alleged violations of the TRO and has not provided any legal basis for this court to hold the defendants in contempt of another court's injunction.

amendment . . . clearly is frivolous" or "advanc[es] a claim or defense that is legally insufficient on its face."  6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed. 2010); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

In deciding a motion to dismiss under Rule 12(b)(6), the court generally may not look beyond the pleadings.  It may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("[T]he court may consider . . . matters of which judicial notice may be taken.").  Documents a plaintiff attaches in a response to a motion to dismiss are also properly considered if referenced in the complaint and if their authenticity is undisputed.  *Walch v. Adjutant Gen.'s Dep't*, 533 F.3d 289, 293–94 (5th Cir. 2008).  "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  Taking judicial notice of public records directly relevant to the disputed issue is proper and does not transform the Rule 12(b)(6) motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011).  Apart from these categories of documents, if the court considers matters outside the pleadings, the court must convert the Rule 12(b)(6) motion to one for summary judgment.  *Tuley v. Heyd*, 482 F.2d 590, 592 (5th Cir. 1973).

**III.    Analysis**

    **A.    Breach of Contract**

Carrillo has alleged that the defendants breached the mortgage contract. The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544–45 (5th Cir. 2003). A binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding. *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012).

Carrillo first alleges that the original Note and Deed of Trust were supplemented and modified by HAMP directives. (Docket Entry No. 1-2 at 8). Carrillo does not allege which HAMP regulations were incorporated into the contract and, of those, which she believes the defendants violated. She also does not explain the mechanism by which HAMP regulations, which were not the result of an agreement by the parties, were incorporated into the Note and Deed of Trust. Even if the mortgage contract is subject to federal HAMP regulations, the case law is clear that there is no private right of action under HAMP. *See, e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n. 4 (7th Cir. 2012) ("Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers."); *see also Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012); *Denley v. Vericrest Fin., Inc.*, 2012 WL 2368325, at *2 (S.D. Tex. June 21, 2012) (citing cases).

In her response to the defendants' motion to dismiss, Carrillo argues that Bank of America's actions were inconsistent with the parties' course of performance under the mortgage contract and

with trade usage as reflected in the HAMP guidelines. Carrillo contends that, under § 1.303 of Texas's enactment of the Uniform Commercial Code (UCC), the course of performance or dealing or trade usage may "supplement or qualify the terms of the agreement." TEX. COM. CODE § 1.303. These allegations were not in Carrillo's complaint. Leave to amend to include them would be futile because as a matter of law the UCC does not apply to the defendants' foreclosure efforts. As other courts applying Texas law have held, "[b]ecause the Deed of Trust places a lien on real property, it is not governed by the UCC." *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio, 1998, no pet.); *see also Coleman v. Bank of New York Mellon*, 2013 WL 1187158, at *3 (N.D. Tex. 2013) (holding that a mortgagor's "reliance on the UCC is misplaced because foreclosure is conducted pursuant to the deed of trust, which is a contract and not a negotiable instrument"); TEX. COM. CODE § 9.109(d)(11) (stating that the UCC does not generally apply to secured transactions involving "the creation or transfer of an interest in or lien on real property").

Carrillo's allegation that the Note and Deed of Trust were modified by statements made by several Bank of America representatives also fails. (Docket Entry No. 1-2 at 8). The complaint does not allege which statements modified the mortgage contract or whether the defendants violated those additional provisions. Amending to include such allegations would be futile because the modifications that Carrillo might allege resulted from the representations would violate the statute of frauds. Under Texas law, "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE § 26.02(b). "Loan agreement" means any promise, agreement, or undertaking "pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money . . . or to otherwise

6

extend credit or make a financial accommodation." *Id*. § 26.02(a)(2). The loan was for more than $50,000. Any alleged modifications that would delay or change the amounts of the loan payments would be a "loan agreement" under § 26.02(a)(2). To be enforceable, a loan-modification agreement would have to "either be in writing and signed by [Bank of America], or an exception to the statute of frauds must apply." *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.); *see also Ellen v. F.H. Partners, LLC*, 2010 WL 4909973, at *5 (Tex. App.—Austin Dec. 1, 2010, no pet.) (holding that a loan officer's promise not to foreclose on the plaintiffs' property until January 2009 to allow the plaintiffs time to refinance or sell their home was unenforceable because the promise was "an oral modification of a loan agreement that was subject to the statute of frauds"). The courts have made clear that oral contract modifications of the sort Carrillo alleges as a matter of law violate the statute of frauds, and Carrillo has not identified any basis to plead an exception.

Carrillo contends that the defendants "failed to allow Plaintiff alternative methods to cure her arrearage, including a payment plan, a short sale agreement, or an opportunity to pay off the arrearage." (Docket Entry No. 1-2 at 8). But she has not alleged any facts suggesting that the mortgage contract required the defendants to offer her alternative methods to cure. In her response to the defendants' motion to dismiss, but not in her complaint, Carrillo contends that the "Deed of Trust provides that Defendants had the obligation to allow Plaintiff a reasonable opportunity to cure a default" and points to paragraph 19 of the Deed of Trust, which gives borrowers a right to reinstate the loan obligation when certain conditions are fulfilled. (Docket Entry No. 15, ¶ 39). The conditions in the Deed of Trust are that the borrower: (a) "pays Lender all sums which then would be due under this Security Agreement and the Note as if no acceleration had occurred"; (b) "cures any default of any other covenants or agreements"; (c) "pays all expenses incurred in enforcing this

7

Security Agreement"; and (d) "takes such action as Lender may reasonably require to assure that Lender's interest in the property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged." (Docket Entry No. 12-1, ¶ 19). Carrillo has not alleged that she fulfilled any of these obligations.

Finally, Carrillo alleges that the defendants "lacked standing" under the mortgage contract to foreclose because "M.E.R.S. did not have the authority to transfer to them any rights under the Note . . . ." (Docket Entry No. 1-2 at 8). But Carrillo's allegations are conclusory. She has not pleaded any facts suggesting why MERS, which she acknowledges was "the original mortgagee," (Docket Entry No. 1-2 at 6), could not transfer its rights under the Note. Carrillo also does not allege which contract was breached by MERS transferring its rights under the mortgage documents. It would be futile to amend to add allegations that MERS could not transfer the Note because it was identified only in the Deed of Trust. Such allegations have been uniformly rejected. Courts applying Texas law have held that "a transfer of an obligation secured by a note also transfers the note." *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011); *see also Bierwirth v. BAC Home Loans Servicing, L.P.*, 2012 WL 3793190, at *4 (Tex. App.—Austin Aug. 30, 2012) ("Although Bierwirth's note containing the express right to transfer did not identify MERS, Bierwirth's deed of trust did identify MERS, and because the note and deed of trust must be read together when evaluating their provisions, MERS had the authority to assign the note and the deed of trust.").

Carrillo's breach of contract claim is dismissed with prejudice because leave to amend would be futile.

### B.     Negligence, Negligent Misrepresentation, and Gross Negligence

Carrillo alleges that the defendants acted negligently by violating federal HAMP regulations stating that "servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in HAMP has been made." HAMP, Supplemental Directive 09-01, at 14 April 6, 2009. To state a negligence claim under Texas law, a plaintiff must show: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Under Texas law, "there is no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing." *Milton v. U.S. Bank Nat. Ass'n*, 2013 WL 264561 (5th Cir. Jan.18, 2013). To the extent that the defendants owe duties to HAMP, Carrillo has not shown why she has standing to assert a claim to enforce those duties. And the courts, as noted above, have consistently rejected any private right of action under HAMP. Carrillo's negligence and gross negligence claims are dismissed with prejudice and without leave to amend because leave to amend would be futile.[2]

Carrillo also asserts a negligent misrepresentation claim against the defendants based on their statements that they were "evaluating Plaintiff's applications for H.A.M.P. modification and other

---

[2] In response to the defendants' motion to dismiss, Carrillo states that Bank of America engaged in a "negligent undertaking" by failing to exercise reasonable care in its staffing and management of its modification services. (Docket Entry No. 15 at ¶¶ 67–74). Carrillo's petition did not include any "negligent undertaking" claim. Leave to amend to do so is inappropriate because such an allegation would be futile. Carrillo acknowledges that Bank of America could have foreclosed without considering Carrillo for a loan modification. Bank of America's alleged failure to exercise reasonable care in evaluating her modification application did not as a matter of law "increase the risk of harm" to her. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (adopting RESTATEMENT (SECOND) OF TORTS § 323); *see also* RESTATEMENT (SECOND) OF TORTS § 323 cmt. c ("[An] actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him."); *Entex, A Div. of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("In determining whether there is an increased risk of harm, we compare the risk of harm resulting from the negligence to that existing before, not during, the undertaking."). Bank of America's alleged failure to exercise reasonable care did not, as a matter of law, leave Carrillo in a worse position than she would have been had it not considered her modification application in the first place.

loss mitigation alternatives, yet failing to do so . . . ." (Docket Entry No. 1-2 at 10). The elements of a negligent misrepresentation claim are: "(1) a defendant, in the course of its business or in a transaction in which it had a pecuniary interest, made a representation; (2) the defendant supplied false information for the guidance of another in the other's business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *Martin K. Eby Constr. Co. v. LAN/STV*, 350 S.W.3d 675, 688 (Tex. App.—Dallas 2011, pet. filed). The defendants move to dismiss Carrillo's negligent misrepresentation claim on the ground that she has not alleged any facts showing that she relied on Bank of America's alleged misrepresentation that it was considering her modification application. Carrillo has not responded to this part of the motion to dismiss.

Carrillo has not alleged that she relied on Bank of America's statement that it was evaluating her HAMP application, that any reliance was reasonable, or that any injuries she suffered were the result of that reliance. Based on the pleadings, Carrillo's loss of her property was due to her default of her loan payment obligations and was not an injury resulting from her reliance on the alleged misrepresentations. And Carrillo's reliance would not have been reasonable if she did not meet the requirements for a loan modification. Carrillo's negligent misrepresentation claim is dismissed, but without prejudice and with leave to amend, because the present record does not permit this court to find futility.[3]

**C.     DTPA**

---

[3] The defendants also argue that Carrillo's negligent misrepresentation claim fails because the alleged misrepresentation is a promise to take an action in the future. Under Texas law, a negligent misrepresentations claim must be based on a statement of existing facts. *See BCY Water Supply Corp. v. Residential Inv., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied) ("A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." (citations omitted)). Carrillo's allegation that Bank of America employees told her that they "are evaluating" her application concerns an existing fact.

10

Carrillo alleges that the defendants violated several provisions of the DTPA by: (1) understaffing their HAMP program and loss-mitigation office; (2) failing to have adequate communication between those responsible for providing loss-mitigation assistance and those responsible for foreclosing on the property; and (3) informing Carrillo that it would consider her HAMP application "without any intention of assisting" her. (Docket Entry No. 1-2 at 10). Carrillo also asserts that the same facts that allegedly give rise to her TDCA claims are actionable under the DTPA through the statutory "tie-in provision."

The tie-in provision makes a violation of certain other laws, including the TDCA, a deceptive act under the DTPA. TEX. FIN. CODE § 392.404(a). There are three elements to a DTPA claim: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). The defendants move to dismiss on the ground that the Carrillo fails to state a DTPA claim because she does not qualify as a "consumer" under that statute.

To be a "consumer" under the DTPA, a person "must seek or acquire goods or services by lease or purchase" and "the goods or services sought or acquired must form the basis of [that person's] complaint." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied). "If either requirement is lacking, the party must look to the common law or some other statutory provision for redress." *Id.*

Carrillo has not alleged any facts suggesting that she sought to acquire or acquired, by lease or purchase, goods or services that form the basis of her DTPA claim. Her DTPA claim arises from her efforts to modify her mortgage loan and prevent foreclosure. "Generally, a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered

11

neither a good nor a service." *Id.* at 160. Courts have held that "subsequent actions related to mortgage accounts — for example, extensions of further credit or modifications of the original loan — do not satisfy the 'good or services' element of the DTPA." *Broyles v. Chase Home Fin.*, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011). Because Carrillo sought to modify her mortgage loan and not to acquire, by purchase or lease, a "good" or "service," she does not have a viable DTPA claim as a matter of law. *See, e.g.*, *Montalvo v. Bank of Am. Corp.*, 2012 WL 1078093, at *7–11 (W.D. Tex. Mar. 30, 2012) (holding that a person seeking a mortgage-loan modification was not a consumer under the DTPA); *Cavil v. Trendmaker Homes, Inc.*, 2010 WL 5464238, at *4 (S.D. Tex. Dec.29, 2010) (holding that "a mortgage or modification of a mortgage is not a good or a service under the DTPA"). Carrillo's tie-in claims are not exempt from the DTPA's requirement that plaintiffs show that they are consumers. *See Cushman v. GC Services, L.P.*, 397 F. App'x. 24, 28 (5th Cir. 2010).

Carrillo argues that a Texas intermediate appellate court's decision in *Herndon v. First Nat. Bank of Tulia*, 802 S.W.2d 396 (Tex. App.—Amarillo 1991, writ denied), shows that she is a DTPA consumer. In *Herndon*, the court found that the plaintiff had sufficiently alleged that she was a consumer because she pleaded that she purchased financial services from a bank including "financial advice on where and when to obtain financing, or abstain from borrowing, and how to structure various financial arrangements." *Id.* at 398. As a number of other courts have noted, the types of intensive services alleged in *Herndon* differ significantly from a bank's consideration of a modification to an already existing loan. *See, e.g.*, *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 576 (W.D. Tex. 2012); *Pennington v. HSBC Bank USA, Nat. Ass'n*, 2011 WL 6739609, at *7 (W.D. Tex. Dec. 22, 2011), *aff'd*, 493 F. App'x 548 (5th Cir. 2012); *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 166 (Tex. App.—Austin 1996, no writ). Any services that Bank of America

provided to Carrillo were incidental to a loan modification. *See First State Bank v. Keilman*, 851 S.W.2d 914, 929 (Tex. App.—Austin 1993, writ denied) ("The key principle in determining consumer status is that the goods or services purchased must be an objective of the transaction, not merely incidental to it." (quoting *FDIC v. Munn*, 804 F.2d 860, 863–64 (5th Cir. 1986)). Because a loan modification is not a service, Carrillo's DTPA claims are dismissed. The dismissal is with prejudice because leave to amend would be futile.

### D.   TDCA

Carrillo alleges that the defendants violated § 392.301(a)(8) of the TDCA, which prohibits debt collectors from "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). She asserts that the defendants "threatened to take actions prohibited by law, including non-judicial foreclosure." (Docket Entry No. 1-2 at 12). But a debt collector's notice that it intends to use a nonjudicial foreclosure process in accordance with the deed of trust does not violate the TDCA. Section 392.301(a) of the TDCA provides that debt collectors are not prohibited from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3). In Texas, nonjudicial foreclosure proceedings are authorized under § 51.002 of the Texas Property Code. Carrillo does not identify any statements, much less threats, by the defendants that they would take actions aside from providing notice of their intent to use the nonjudicial foreclosure process. Carrillo's claims under § 392.301(a)(8) are dismissed without prejudice.

Carrillo also alleges that the defendants' "repeated telephone conferences with Plaintiffs, and misplacements of paperwork, and their requirement that Plaintiffs repeatedly follow up and be re-interviewed and provide documents and information already provided, constitute abuse and harassment under Section 392.302." (Docket Entry No. 1-2 at 12). Section 392.302 of the TDCA

states that a debt collector "may not oppress, harass, or abuse a person" by engaging in certain statutorily specified behavior. TEX. FIN. CODE § 392.302. This behavior includes: (1) "using profane or obscene language or language intended to abuse unreasonably the hearer or reader; (2) "placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number"; (3) "causing a person to incur a long distance telephone toll, telegram fee, or other charge by a medium of communication without first disclosing the name of the person making the communication"; and (4) "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." TEX. FIN. CODE § 392.302(1)–(4). Carrillo has failed to allege any prohibited activity. Carrillo does not allege that the defendants used profane or otherwise inappropriate language, that they failed to disclose their names, or that they caused Carrillo to incur communication charges without first disclosing their names. Although Carrillo alleges that the defendants made repeated telephone calls, she has not pleaded any facts suggesting that the defendants' actions were motivated by an intent to abuse or harass her. Carrillo's § 392.302 claims are dismissed, without prejudice.

Section 392.304 of the TDCA prohibits a debt collector from using, "in debt collection," certain practices that involve "fraudulent, deceptive, or misleading representations." TEX. FIN. CODE § 392.304(a). Carrillo alleges that the defendants violated § 392.304(a)(8) by "misrepresenting the character, extent, or amount of a consumer debt" and "misrepresenting the consumer debt's status in a judicial or government proceeding." (Docket Entry No. 1-2 at 13). For a statement to be a misrepresentation under the TDCA, a defendant must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, 2006 WL 1791606, at *7 (Tex. App.—Fort Worth June 29, 2006, pet. denied). For instance, a collection notice or balance statement misstating the amount owed on

14

a debt constitutes a misleading assertion of the amount of that debt under the TDCA. *See Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *7 (N.D. Tex. June 24, 2009); *Steele v. Green Tree Servicing, LLC*, 2010 WL 3565415, at *5, n. 6 (N.D. Tex. Sept. 7, 2010). Carrillo does not specify which of the defendants' actions, if any, were misrepresentations of "the character, extent, or amount" of Carrillo's debt or that debt's "status in a judicial or government proceeding." TEX. FIN. CODE § 392.304(a)(8). Her § 392.304 claims are dismissed without prejudice.[4]

As noted, the TDCA claims are dismissed without prejudice, because on the present record, this court cannot conclude that amendment would be futile.

### E. Promissory Estoppel

As an alternative to her breach of contract claims, Carrillo asserts that the defendants are liable for damages under a promissory estoppel theory. She alleges that Bank of America "promised Plaintiff that the foreclosure of September 4, 2012 would not take place as long as the HAMP application was in consideration." (Docket Entry No. 1-2 at 13). The elements of promissory estoppel in Texas are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to her detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). The promissory estoppel cause of action is available to a promisee who has acted to her

---

[4] Carrillo includes several other factual allegations in the TDCA section of her state-court petition. She alleges, generally, that the defendants violated the TDCA by:

> promising hope of a modification agreement without intending to provide one; claiming to have lost documents and files and re-asking and harassing Plaintiffs for the same information and documents over and over again; accelerating the note; posting for foreclosure, and proceeding with foreclosure, when Defendants had no right to do so and when Defendants knew they had thwarted Plaintiff's good faith effort to cure the default, reverse acceleration, and stop the foreclosure.

Some of these factual allegations are discussed in this order. Carrillo does not state, however, how the rest of these allegations violated any of the TDCA's provisions.

detriment in reasonable reliance on an otherwise unenforceable promise. *Bell v. Bank of Am. Home Loan Servicing LP*, 2012 WL 568755, at *5 (S.D. Tex. Feb. 21, 2012). Promissory estoppel is an alternative to a breach of contract claim. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). "Promissory estoppel does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 139 (Tex. App.—Corpus Christi 2001, no pet.).

The defendants respond that Carrillo's promissory estoppel claims are precluded by the statute of frauds. When the statute of frauds applies, promissory estoppel is available only if the alleged oral promise is a promise to sign an existing document that satisfies the statute of frauds. *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism'd); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) ("Under Texas law, promissory estoppel requires that the agreement that is the subject of the promise must comply with the statute of frauds. That is, the agreement must be in writing at the time of the oral promise to sign it." (internal quotation omitted)). As discussed above, Carrillo's loan agreement and any alleged modifications to that agreement, including modifications to delay payment or make other accommodations, are subject to the statute of frauds. Her promissory estoppel claims are dismissed, with prejudice, because amendment would be futile.

**IV.     Conclusion**

For the reasons stated above, the defendants' motion to dismiss, (Docket Entry No. 12), is granted. The claims for breach of contract, negligence, violations of the DTPA, and promissory estoppel are dismissed with prejudice. Carrillo's other claims are dismissed without prejudice to

amendment by May 13, 2013.

       SIGNED on April 11, 2013, at Houston, Texas.

                                                  Lee H. Rosenthal
                                           United States District Judge